**Fredrick B. STROTHMAN, Plaintiff,**

v.

**Adam GEFREH, Richard Paynter, Arthur Bleecher, Carl Panzarella, Marvin Harmatz, Jack Bunten and John Wilcox, Defendants.**

**Civ A. No. 82–K–32.**

United States District Court,
D. Colorado.

Feb. 12, 1985.

David S. Yost, George T. Ashen, Denver, Colo., for plaintiff.

Robert N. Miller, U.S. Atty., Janis E. Chapman, Nancy E. Rice, Asst. U.S. Attys., Denver, Colo., for defendants.

**ORDER**

KANE, District Judge.

Plaintiff, Fredrick Strothman, was appointed an Administrative Law Judge (ALJ) for the Office of Hearings and Appeals, Social Security Administration, United States Department of Health and Hu-

man Services in April, 1980. In November, 1980, he was selected to be the Administrative Law Judge in Charge (ALJIC) of the Denver Hearing Office. On October 31, 1981, plaintiff was relieved of his duties as ALJIC, whereupon plaintiff filed this suit against the seven other ALJs who were assigned to the Denver Hearing Office during the period in which the events occurred which form the basis of this lawsuit.

The complaint alleges that Paynter, Panzarella, Harmatz and Bunten defamed the plaintiff. My previous order denying the defendants summary judgment on the defamation claim, 552 F.Supp. 41, was reversed by the Tenth Circuit, *Strothman v. Gefreh,* 739 F.2d 515 (1984). In accordance with that opinion, I now order that judgment be entered on the defamation claim in favor of Paynter, Panzarella, Harmatz and Bunten. Strothman has also alleged that all defendants conspired to remove him from office improperly and engaged in extreme and outrageous conduct, which actions if proven may constitute separate torts in Colorado. *Id.* at 520. With regard to these latter claims, the Tenth Circuit concluded that the record was insufficiently developed to determine as a matter of law whether the defendants would be immune from liability for such torts. The case was remanded for further consideration of the defendants' claim of absolute immunity with respect to all remaining claims and defendants.

The defendants have, upon remand, renewed their motion for summary judgment. Summary judgment is a drastic remedy and the Tenth Circuit has cautioned that any relief pursuant to Rule 56 should be applied with care. *Jones v. Nelson,* 484 F.2d 1165, 1166, 1168 (10th Cir.1973). Rule 56 states that summary judgment shall be rendered when there is no genuine issue as to any material fact. Then the moving party is entitled to judgment as a matter of law. Pleadings and factual inferences tending to show issues of material fact should be viewed in the light most favorable to the party opposing summary judgment. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980). Unless the moving party can demonstrate entitlement beyond a reason-able doubt, summary judgment must be denied.

■ Under *Jackson v. Kelly,* 557 F.2d 735 (10th Cir.1977), to evaluate defendants' claim of immunity, I must apply a "discretionary function" test and balance the policies underlying the official immunity doctrine of *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) in the context of the facts. Under *Jackson* and subsequent cases in this circuit, my inquiry is essentially threefold: (1) whether the defendants were acting within the scope of their official duties; (2) whether the acts complained of involved the exercise of judgment or discretion; and (3) whether a grant of absolute immunity under the circumstances of this case would further the policies underlying the official immunity doctrine. *Strothman, supra,* at 518.

## I. SCOPE OF EMPLOYMENT

In my December 14, 1982 order, I found that "[it] is abundantly clear that the defendants were acting within the scope of their employment by responding to criticisms and questions relating to morale and productivity." The Tenth Circuit made essentially the same finding, *Strothman, supra* at 519, although it limited its holding to the defamation claim before it. The same acts which were alleged by plaintiff as the basis for the defamation claim form the basis of the conspiracy and outrageous conduct claims. The plaintiff continues to claim that the defendants criticized him and attempted to have him removed from his position, but now characterizes the same actions which formed the basis of the defamation claims as grounds for the conspiracy and outrageous conduct torts. Judging from the motions, pleadings and briefs now before me, it is apparent that discovery has developed no new evidence of acts which can be characterized as "conspiratorial" or "outrageous".

■ Defendants' brief contends that of the 1,427 pages of discovery material provided to defendants by plaintiff, which material purports to be in support of plain-

tiff's remaining claims, each and every piece constitutes some type of "agency memorandum or note". (Defendants' brief in support of motion for summary judgment, at page 4). Plaintiff does not rebut this contention. I find that to the extent the defendants' defamatory actions were outrageous or done with the intent to conspire to remove the plaintiff improperly from office, they were done within the scope of the defendants' official duties and employment. Plaintiff contends that the defendants' conspiracy focused on efforts to prevent the plaintiff from doing his job. Clearly, however, the defendants didn't want Mr. Strothman to be their ALJIC. Believing that one of the other ALJs would be a better ALJIC than Mr. Strothman, in whom they had lost confidence, they took affirmative steps to see that he was removed. When internecine disagreements develop, the actions taken (short of criminal assaults) and words said as a result are within the scope of employment. *Preble v. Johnson*, 275 F.2d 275 (10th Cir.1960).

## II.  EXERCISE OF DISCRETION

Plaintiff cites *McCray v. Maryland*, 456 F.2d 1 (4th Cir.1972), for the proposition "when a judge acts in a non-judicial capacity he *pro tanto* loses his absolute immunity and is subject to liability as is any state official." *McCray* is factually inapposite. I have already determined that the defendants were acting within the scope of their employment. Even if the defendants did conspire to remove the plaintiff from the ALJIC position, that was a conspiracy against the ALJIC *qua* Strothman, and not ALJIC *qua* ALJIC. The defendants were not attempting to discredit the office of ALJIC, but rather to discredit Mr. Strothman, who happened to be the ALJIC. The defendants did not conspire to impair the functioning of the office of the ALJIC itself, but rather its occupant, and then only because they had lost faith in Mr. Strothman's management abilities and credibility. Judging has nothing to do with such a controversy.

The Tenth Circuit noted that "the effective functioning of government requires that officials in defendants' position be free to offer comments and criticisms regarding administrative matter without fear of potentially chilling damage suits." *Strothman, supra* at 520. It is clear that the defendants were acting within the scope of their employment and that their complaints involved the exercise of discretion.

## III.  POLICIES UNDERLYING OFFICIAL IMMUNITY

The final question which must be addressed is that of public policy. Would a grant of absolute immunity under the circumstances of this case further the policies underlying the official immunity doctrine? The parties do not dispute that Mr. Strothman, as ALJIC, was merely the first among equals. His function was more that of an office manager than a supervisor. In such a situation the ALJs may have had strong feelings about Strothman's administrative decisions having a perceived negative effect on the ALJs quasi-judicial functions. They may have believed it not only their right but their duty to speak out. The affidavit of ALJ Bunten expresses just such an opinion. The defendants characterize the core issue in the application of this third test as whether it is in the public interest to subject to judicial scrutiny the in-house arguments of a group of federal employees. Defendants contend that this posturing of the issue is particularly apt in light of the fact that plaintiff suffered no financial harm. I agree with defendants that any interest Mr. Strothman may have in airing perceived wrongs by suing his colleagues individually is outweighed by the need for federal employees to be uninhibited in their criticism of agency problems and perceived management deficiencies.

IT IS ORDERED that the defendants' motion for summary judgment is granted. Each party to pay its own costs and fees. It is further

ORDERED that this complaint and civil action are dismissed.